Filed 6/28/18; pub. & mod. order (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| LANDWATCH SAN LUIS OBISPO COUNTY,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>CAMBRIA COMMUNITY SERVICES DISTRICT,<br><br>    Defendant and Respondent. | 2d Civil No. B281823<br>(Super. Ct. No. 14CVP-0258)<br>(San Luis Obispo County) |

      A nonprofit organization petitioned for a writ of administrative mandate against a public agency. The organization elected to prepare the administrative record. But because of delays, the agency prepared the record. The agency prevailed and moved for costs that included the costs of preparing the administrative record and an appendix. The trial court found the agency acted properly in preparing the record and appendix. The organization appeals the costs awarded to the agency. We affirm.

FACTS

The Cambria Community Services District (District) approved an emergency water supply project on January 30, 2014. The resolution approving the project included a resolution that the project is exempt from the California Environmental Quality Act (CEQA). The District issued a notice of exemption on September 9, 2014.

On October 14, 2014, LandWatch San Luis Obispo County (LandWatch) filed a petition for writ of administrative mandate. The petition alleged that the District in approving the project failed to comply with CEQA. (Pub. Res. Code, § 21000 et seq.)[1] LandWatch elected to prepare the administrative record subject to the District's certification of its accuracy. (*Id.*, § 21167.6, subd. (b)(2).)

On October 10, 2014, in anticipation of the need to prepare an administrative record, LandWatch sent the District a request pursuant to the California Public Records Act. The request was for all public documents relating to the approval of the project and the Notice of Exemption. The District responded with documents in November 2014.

In December 2014, the District notified LandWatch it had additional documents that would be mailed upon the payment of $34.80 in costs. LandWatch did not request the additional documents until March 2015. The District had to re-gather the documents. It produced them in April 2015.

It was not until August 2015 that LandWatch presented a draft administrative record index to the District. In the meantime, due to the pending lawsuit, the County of San Luis

_____

[1] All statutory references are to the Public Resources Code unless otherwise stated.

2.

Obispo was refusing to release $4.3 million in grant funds awarded for the project. The delay in resolving the lawsuit was putting the District in financial distress.

On August 19, 2015, the District wrote to LandWatch that the draft index was both overinclusive and underinclusive. The index was underinclusive in that it failed to include the January 30, 2014, resolution approving the project. The District claimed the index was overinclusive because it included documents created after the January 30, 2014, approval date. Review of the project approval is limited to information the District had on the January 30, 2014, date of approval. The letter ended by stating that in order to expedite the process of preparing the record, the District prepared a new index and was proceeding with certifying the record immediately. The District certified the record the same day.

LandWatch brought a motion for an order to include documents in the administrative record beyond January 30, 2014. On December 3, 2015, the trial court ruled:

"Despite Landwatch's election to prepare the administrative record itself, the District, because of time delays, took it upon itself to prepare and certify the administrative record which includes all documents up until January 30, 2014, when the District contends that it approved the Project and determined it was exempt from CEQA. Pursuant to Public Resources Code § 21167.6(b), the District as the lead agency is ultimately responsible for certifying the accuracy of the administrative record such that there is no impropriety in the District taking the initiative to complete preparation of the record. [¶] . . .

"[T]he Court orders that the supplemental records and documents requested by Landwatch shall be certified by the District and included in a separate appendix to the previously certified administrative record."

The District waited for three weeks for LandWatch to provide it with the documents LandWatch wanted certified for the appendix. Finally, on February 5, 2016, the District wrote LandWatch demanding that the documents be produced immediately. The letter warned that if LandWatch did not produce the documents by February 10, 2016, the District would prepare the supplemental appendix itself. The reason for the urgency was that trial was set for March 23, 2016, and the parties needed time for briefing.

When on February 10, 2016, the District had not heard from LandWatch, the District began preparing the supplemental appendix on its own. The District completed the process on February 17, 2016, and gave it to its clerk to review and certify.

The District did not hear from LandWatch until February 19, 2016, when it received an email stating for the first time that LandWatch was working on its own version of the appendix.

At this point the District was unwilling to start over. LandWatch brought a motion asking the court to reject the appendix certified by the District and order LandWatch's appendix certified instead. The trial court denied the motion finding that the District complied with the court's prior ruling.

Ultimately the trial court denied LandWatch's petition for administrative mandate. The court found the project was approved on January 30, 2014, and that the project was exempt from CEQA.

The District filed a memorandum of costs, seeking $38,836.54, including $4,299.01 for preparation of the certified administrative record and $26,922.46 for preparation of the record appendix. LandWatch filed a motion to tax costs. The court awarded the District a total of $21,160.46.

In awarding the costs, the trial court stated: "Landwatch believes the District should not recover preparation costs for the certified administrative record because under Public Resources Code § 21167.6(b), Landwatch elected to be responsible for the record. However, there were delays in completing the record and the Court found that the District properly took over the process and produced a certified administrative record."

On appeal, LandWatch challenges $18,230.35 attributable to the District's preparation of the administrative record and appendix.

DISCUSSION

I

LandWatch contends the trial court improperly awarded the District costs for preparing the administrative record.

LandWatch relies on section 21167.6, subdivision (b)(2), which provides: "The plaintiff or petitioner may elect to prepare the record of proceedings . . . subject to certification of its accuracy by the public agency, within the time limit specified in this subdivision."

LandWatch argues it gave timely notice of its election to prepare the record. But it ignores the requirement that it prepare the record "within the time limit specified in this subdivision." That time limit is 60 days from the date of the notice. (§ 21167.6, subd. (b)(1).)

5.

LandWatch served the notice of its election to prepare the record on October 14, 2014. LandWatch did not even produce a draft administrative record index until August 2015. Finally, on February 5, 2016, the District wrote LandWatch demanding the documents LandWatch wanted certified. The District warned that if LandWatch did not produce the documents by February 10, 2016, the District would prepare the documents itself. LandWatch did not reply until February 19, and the reply was that LandWatch was working on it. By then the District had already certified the documents it prepared.

LandWatch attempts to shift the blame for the delay onto the District by stating the evidence in a light most favorable to itself. But that is not how we view the evidence. In viewing the evidence, we look only to the evidence supporting the prevailing party. (*GHK Associates v. Mayer Group, Inc.* (1990) 224 Cal.App.3d 856, 872.) We discard evidence unfavorable to the prevailing party as not having sufficient verity to be accepted by the trier of fact. (*Ibid.*) Where the trier of fact has drawn reasonable inferences from the evidence, we have no power to draw different inferences, even though different inferences may also be reasonable. (9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 376, pp. 434-435.) The trier of fact is not required to believe even uncontradicted testimony. (*Sprague v. Equifax, Inc.* (1985) 166 Cal.App.3d 1012, 1028.) Here the trial court expressly found that the District acted properly in preparing the record. Implicit in the finding is that LandWatch unreasonably delayed. LandWatch's right to prepare the record is subject to a 60-day limitation. Having unreasonably delayed, it forfeited that right.

In *Coalition for Adequate Review v. City and County of San Francisco* (2014) 229 Cal.App.4th 1043 (*Coalition*), petitioners for

6.

a writ of administrative mandate elected to prepare the administrative record. Petitioners presented an incomplete record to the agency. Unable to obtain the petitioners' cooperation to supplement the record, the agency obtained by motion an order allowing the supplementation. When the trial court denied the writ, the agency filed a memorandum of costs that included costs for preparing the supplemental record. The trial court denied the agency those costs on the ground that the petitioners elected to prepare the record under section 21167.6, subdivision (b)(2). The Court of Appeal reversed stating: "[T]he fact a petitioner elects to prepare the record under section 21167.6, subdivision (b)(2), does not ipso facto bar the recovery of record preparation costs by a public agency. Subdivision (b)(2) contains no such prohibition. Moreover, that subdivision expressly refers to and incorporates the 60-day period for record certification set forth in the first sentence of section 21167.6, subdivision (b)(1). (§ 21167.6, subd. (b)(2).) Thus, the two subdivisions are interrelated. The record-preparation cost provision—specifying the parties, not the public agency, are to pay for the record—is, as we have discussed, set forth in the third and final sentence of subdivision (b)(1) and, significantly, does not refer to any particular means by which the record is prepared. (*Id.*, subd (b)(1).) Finally, . . . the fact a petitioner makes an election to proceed under subdivision (b)(2), does not mean the agency will never, under any circumstances, incur record preparation costs." (*Coalition*, at p. 1055.)

LandWatch distinguishes *Coalition* on the grounds that there the agency did not prepare the entire record and obtained permission from the trial court before preparing the supplemental record. Every case has its unique facts, but the

point is that under the appropriate circumstances the trial court has discretion to award the agency costs for preparing the record notwithstanding the petitioner's election under section 21167.6, subdivision (b)(2).

That is what the trial court did here and it was well within its discretion. The District has the right to a timely record.

## II

LandWatch contends the trial court erred in awarding the District costs for preparing the separate appendix.

The separate appendix consists of documents created after the January 30, 2014, approval of the project by the District. While the administrative record was being prepared, LandWatch insisted such documents are properly part of the administrative record. It obtained an order from the trial court to prepare the separate appendix over the District's objection that the documents are not properly part of the record. Now that costs are being assessed against LandWatch, it concedes that the District was right all along. Documents in the separate appendix are not properly part of the administrative record. LandWatch argues that because the District asserted in the trial court that the documents in the appendix were not properly part of the administrative record, it will not now be heard to say otherwise. Thus, in LandWatch's view, it is the District that must absorb the cost of preparing documents ordered by the trial court on LandWatch's erroneous insistence and over the District's proper objection.

The trial court ordered the separate appendix prepared on LandWatch's assertion that documents after January 30, 2014, were properly part of the administrative record. For LandWatch

to now assert that the appendix is not part of the record to escape the costs it created is fanciful, if not perverse.

                                III

LandWatch contends the trial court did not perform its duty to show that the separate appendix costs were reasonable and reasonably necessary.

Whether a cost item is reasonably necessary and whether the costs awarded are reasonable are reviewed for abuse of discretion. (*Wagner Farms, Inc. v. Modesto Irrigation Dist.* (2006) 145 Cal.App.4th 765, 774; *Coalition, supra*, 229 Cal.App.4th at p. 1058.)

Here the District requested $4,299.01 for preparation of the administrative record and $20,059.17 for preparation of the appendix. The trial court found that $4,299.01 for the administrative record is reasonable. The court found that the amount claimed for preparation of the appendix is "on the high side" in that preparation of the record includes efforts attributable to the appendix. The court stated, "While the District contends these higher costs were caused by Landwatch[,] the District most likely has some culpability." The court reduced the costs of preparing the appendix by 50 percent ($10,029.58) for a total award of $14,328.59.

The District spent 23.1 hours preparing the administrative record and 103.4 hours preparing the appendix for a total of 126.5 hours. LandWatch claims it spent "hundreds of hours" on its own version of the record.

The administrative record consists of 422 pages and the appendix consists of 7,683 pages for a total of 8,105 pages. That amounts to an award of $1.77 per page. Not only is the trial

                                9.

court's cost award reasonable, but it is on the low side of reasonable.

LandWatch complains that instead of inquiring into the details of the District's cost bill, the trial court simply "split[] the baby" by reducing the District's cost claim for the appendix by 50 percent.

But given that LandWatch erroneously insisted on the appendix, the trial court would have been well within its discretion to give the District the total amount it claimed. Instead, the court reduced the amount by 50 percent based on the finding that the District "most likely has some culpability" for the high costs. "[M]ost likely has some culpability" is a slender reed on which to base a substantial discount. LandWatch achieved a significant reduction in its costs.

IV

LandWatch contends the trial court erred in awarding the District $1,032 in fees to CourtCall for 12 telephonic appearances.

An item not specifically allowable as costs under Code of Civil Procedure section 1033.5, subdivision (a), and not specifically prohibited under subdivision (b), may be allowed as costs at the discretion of the trial court if reasonably necessary to the conduct of the litigation. (*Citizens for Responsible Development v. City of West Hollywood* (1995) 39 Cal.App.4th 490, 506.)

LandWatch argues Code of Civil Procedure section 1033.5, subdivision (b)(3) expressly disallows telephone charges. But CourtCall is not a telephone charge. It is a means by which a party can make a court appearance without being physically present in court.

10.

LandWatch argues that District's counsel is a 10-minute walk from the courthouse. But the District's counsel who appeared by CourtCall was in Orange County. The trial court did not abuse its discretion.

LandWatch also complains about $695 in copying costs. It claims it could have obtained copying for less. But LandWatch cites no authority for the proposition that the reasonable cost is the very lowest.

LandWatch complains that $1,708 to transcribe the January 30, 2014, meeting should not be allowed. In fact, the trial court awarded only $715 in transcription costs. That is the amount LandWatch argued should be awarded.

LandWatch cites Code of Civil Procedure section 1094.5, subdivision (a) for the proposition that where a transcript is necessary to a proper review for the administrative proceedings, the cost shall be borne by the respondent. But that only applies where the respondent is proceeding under Government Code section 68630, providing for a waiver of fees. LandWatch did not proceed under Government Code section 68630. Instead, Code of Civil Procedure section 1094.5 provides, "Except when otherwise prescribed by statute, the cost of preparing the record shall be borne by the petitioner." LandWatch cites no applicable statutory exception.

The judgment (order) is affirmed. Costs are awarded to respondent.


GILBERT, P. J.

We concur:

PERREN, J.          TANGEMAN, J.


11.

Ginger E. Garrett, Judge

Superior Court County of San Luis Obispo

_____

Environmental Law Clinic, Mills Legal Clinic at Stanford Law School, Deborah A. Sivas; Cynthia Hawley for Plaintiff and Appellant.

Rutan & Tucker, LLP, Robert S. Bower, John A. Ramirez, Peter J. Howell; Carmel & Naccasha, LLP, Timothy J. Carmel, Michael M. McMahon for Defendant and Respondent.

Filed 7/27/18

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX


| | |
|---|---|
| LANDWATCH SAN LUIS OBISPO COUNTY,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>CAMBRIA COMMUNITY SERVICES DISTRICT,<br><br>    Defendant and Respondent. | 2d Civil No. B281823<br>(Super. Ct. No. 14CVP-0258)<br>(San Luis Obispo County)<br><br>ORDER MODIFYING OPINION AND CERTIFYING OPINION FOR PUBLICATION [NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on June 28, 2018, be modified as follows:

1.  On page 1, the first three sentences are changed to read:
    A nonprofit organization petitioned for a writ of administrative mandate against a public agency, claiming that the agency violated provisions of the California Environmental Quality Act (CEQA).  The organization elected to prepare the administrative record.  But because of unreasonable delays, the agency prepared the record.

13.

2. On page 2, first paragraph, "the California Environmental Quality Act (CEQA)" is changed to "CEQA."

3. On page 2, the third paragraph is changed to read:

In anticipation of the need to prepare an administrative record, LandWatch sent the District a request pursuant to the California Public Records Act for all public documents relating to the approval of the project and the Notice of Exemption.  In response, the District supplied all the documents in November 2014.

4. On page 2, fourth paragraph, second line in first sentence, the words "should be mailed" are changed to "it would mail."

5. On page 3, first line at top of page, the words "was refusing" are changed to "refused."

6. On page 3, first full paragraph, the second and third sentences are changed to read:

The index was underinclusive because it failed to include the January 30, 2014, resolution approving the project. The index was overinclusive because it included documents created after the January 30, 2014, approval date.

7. On page 3, first line of second full paragraph, the words "brought a motion" are changed to "moved."

8. On page 4, first line of second paragraph, the words "waited for three weeks" are changed to "waited three weeks."

9. On page 4, the last sentence in the second paragraph is changed to read:  "The urgency behind the request was that trial was set for March 23, 2016, and the parties needed time for briefing."

10. On page 4, second line of the fifth paragraph, the words "a motion asking the court" are changed to "a motion requesting the court."

11. On page 6, second line in first paragraph, the words "did not even produce" are changed to "failed to produce."

14.

12. On page 6, the penultimate sentence in the first paragraph is changed to read: "LandWatch did not reply until February 19, and its reply was that it was working on it."

13. The paragraph commencing at the bottom of page 7 and ending at the top of page 8 and the first full paragraph on page 8 are modified to read as follows (which will result in one paragraph, not two):

> LandWatch attempts to distinguish *Coalition* because there the agency did not prepare the entire record and obtained permission from the trial court before preparing the supplemental record. Every case has its unique facts, and the so-called "distinction" here is inconsequential. Under the appropriate circumstances, the trial court has discretion to award the agency costs for preparing the record notwithstanding the petitioner's election under section 21167.6, subdivision (b)(2). That is what the trial court did here and it was well within its discretion. The District has the right to a timely record.

14. On page 10, penultimate sentence in second full paragraph, the sentence is changed to read:

> "[M]ost likely has some culpability" is a slender reed on which to base a further discount.

15. On page 11, the last line in the first paragraph ("The trial court did not abuse its discretion") is deleted.

There is no change in judgment.

The opinion in the above-entitled matter filed on June 28, 2018, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

15.